[S. F. No. 2537.    Department Two.—September 29, 1903.]

## CENTERVILLE AND KINGSBURY IRRIGATION DITCH COMPANY, Respondent, v. SANGER LUMBER COMPANY, Appellant.

EASEMENT—FLUME ACROSS DITCH—CONSTRUCTION OF GRANT—OBSTRUCTION TO FLOW OF WATER.—A grant of a right of way for a flume across plaintiff's ditch to defendant's grantor, providing that the

crossing should "be made in such a way as not to stop or impede the flow of all the water which the canal or ditch may or can carry, or any future enlargement of said canal or ditch," the word "all" used in the proviso is intended to import, not that the flume is not an obstruction, unless it obstructs all of the water, but that there should be no stoppage or impediment to the maximum quantity of water which the ditch then, or in the future, was capable of carrying.

ID.—PRESCRIPTIVE TITLE TO OBSTRUCTION—RUNNING OF STATUTE.—Where it appears that the flume was as much an obstruction to the flow of water in the ditch when it was originally constructed as when the action was commenced to restrain the obstruction, the cause of action accrued when it was constructed, and the statute of limitations then began to run; and if the defendant and his grantor have since maintained the flume as constructed, during all the period required by the statute, not under license, but as of right, the defendant has a prescriptive title to maintain it as constructed, and cannot be required to do any other act as a condition to its continued future maintenance.

ID.—PROMISE BY DEFENDANT'S MANAGER.—A promise of the defendant's manager to cause a truss-bridge to be constructed across the canal to support the flume, made after the defendant had acquired a prescriptive title to maintain the flume as originally constructed, and made without the authority of the defendant, cannot prove a license, or affect the prescriptive title.

ID.—ENLARGEMENT OF DITCH—INCREASE OF VOLUME—ANNUAL CLEANING.—The prescriptive title of the defendant to maintain the obstruction, once acquired, cannot be affected by any increase in the flow of the water, either by a future enlargement of the ditch or by an increase of its volume caused by an annual cleaning of the ditch.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. E. W. Risley, Judge.

The facts are stated in the opinion of the court.

Stanton L. Carter, for Appellant.

M. K. Harris, and George Cosgrove, for Respondent.

HENSHAW, J.—This action was brought praying injunction against defendant from maintaining its flume across the plaintiff's ditch ''in its present condition, or in such a condition that it obstructs and impedes the flow of water

in plaintiff's said ditch." Judgment passed for plaintiff, and defendant appeals from that judgment and from the order of the court denying its motion for a new trial.

Upon October 5, 1889, the plaintiff herein granted the Kings River Lumber Company, to whose interests this defendant has succeeded, a right of way twenty-five feet in width for a flume across plaintiff's ditch, or canal, at two places on the surveyed and located line of the flume, one being the place in controversy. The grant provided that the crossing should "be made in such a way as not to stop or impede the flow of all the water which the canal, or ditch, may or can carry, or any future enlargement of said canal, or ditch." The grant further provided that the grantee, its successors and assigns, might construct and operate its flumes at such places "by such means, in such manner, and at such times as to it or them may be convenient." In the same year the flume in controversy was constructed where it now stands. The ditch at that point is about forty-five feet wide, but the flume is constructed diagonally across the channel of the canal, and is one hundred and sixty-four feet in length. The superstructure is supported by posts four by six inches in diameter and sixteen feet apart. The posts are arranged in sets of two,—an upper and a lower post,—the lower being directly down-stream from the other, and about ten or twelve feet distant. The court found that "the flume is so constructed as to obstruct and greatly impede all the water flowing in plaintiff's ditch; that plaintiff has enlarged its ditch within five years last past, and has increased the volume of water flowing therein within five years last past, and the effect of the posts and flume as now constructed is to obstruct and impede the flow of all the water flowing in the ditch, and the posts do obstruct and impede the flow of all water of the ditch, and will obstruct and impede the flow thereof so long as the posts and flume remain in their present condition." Appellant's first attack upon this finding is based upon its interpretation of the contract. It is contended that the evidence does not show that "*all*" the water flowing in the ditch is stopped or impeded, that an obstruction such as the posts admittedly were, placed in the current of a stream, may impede the flow of some of the water, but does not and cannot impede the flow

of all. We think, however, that a wrong interpretation is put upon the meaning of the word "all" as employed in the contract. It is used to signify "maximum quantity of." It was not in contemplation that every drop of running water should be absolutely stopped or absolutely impeded, but that there should be no stoppage or impediment to the maximum quantity of water which the ditch then, or in the future, was capable of carrying, and thus further to impede the natural flow.

· The evidence of the nature and extent of the impediment was conflicting, but there was enough to justify the finding that the effect of the posts was materially to check the flow of the water, and to cause a deposit of sand above, which deposit in turn itself decreased the carrying capacity of the ditch. It is not the fact that all the water which the ditch could carry did ultimately pass the obstruction, which measures the rights of the two contracting parties, but it was, and is, that those waters could pass without impairment or check to their normal flow, for, when checked, the inevitable tendency is to cause a deposit of the silt, sand, and detritus which they were carrying, and thus further to impede the natural flow.

The defendant, however, pleaded the statute of limitations to the action. It appears that the flume was constructed in 1889, and has been maintained in its present place ever since, the only change in the use being the immaterial one that, at a time subsequent to its construction, some of the supporting posts were removed. This action was brought on May 15, 1899. It is indisputable that, whether the ditch was carrying much or little water, if the flume was an obstruction at the time the action was commenced, it was an obstruction from the day it was built. Plaintiff's cause of action then accrued, and the statute of limitations then began to run. (*Robinson* v. *Pittsburg R. R. Co.*, 32 Pa. St. 334;[1] *Davis* v. *Hart*, 123 Cal. 388.) If the defendant has maintained its flume during all the intervening years, not under license, but as of right, it has a prescriptive title (Civ. Code, sec. 1007), and cannot be required to do some other act as a condition to its continued future maintenance. (*Woolever* v. *Stewart*, 36 Ohio St. 146.[2]) Two propositions are advanced by respondent against the prescriptive right so asserted by appellant.

[1] 72 Am. Dec. 792.          [2] 38 Am. Rep. 569.

Of these, the first is, in substance, that the continued use by defendant was permissive as licensee, because, upon plaintiff's protest, defendant's manager repeatedly declared that he would in time cause a truss-bridge to be thrown across the canal to support the flume. But, in the first place, these alleged promises were not made until the fall of 1897, eight years after the flume was constructed, and long after the statute of limitations had run in favor of the defendant's title. In the second place, this promise was not the promise of the defendant, but of one of its employees, and it not only does not appear that he was acting with authority of the defendant, but it does affirmatively appear that he did not have the authority on behalf of the corporation either to make the promise or to do the work which it involved. These promises had been made by Mr. Smith, the then manager of the company. The only attempt to show his authority was by the testimony of Mr. Boole, the manager who succeeded Mr. Smith. But Mr. Boole testified that he occupied the same position that Mr. Smith had formerly occupied; had general supervision of the flume and acted under the control of the board of directors, but that he did not have authority to make an expenditure such as would be involved in trussing the flume without authority from the board of directors. This is not evidence to establish the fact that Mr. Boole's predecessor did have such authority. The second proposition advanced by respondent in support of the finding of the court against the plea of the statute of limitations seems to be based upon the language of the grant, that the flume should be constructed in such a way as not to stop or impede the flow of all the water which "any future enlargement" of the canal, or ditch, might carry, and it is found by the court, as above quoted, that the plaintiff, within the five years last past, has enlarged its ditch and increased the volume of water flowing therein. Upon this it may be said, in the first place, that the evidence of enlargement is to the last degree unsatisfactory. Mr. Parlier, plaintiff's president, testified that the ditch had not been altered above the flume, except that the bottom had been washed out, but that it would carry more water than it did seven or eight years ago, because some of the drops had been left out below the flume. And finally,

"The ditch company has not enlarged the canal since the flume was built." The most that can be said of the evidence of enlargement is, that the ditch was subjected to an annual cleaning, which annual cleaning tended to increase the flow of the water. But, apart from this, defendant's prescriptive right, once acquired, cannot be made dependent upon any increase in the flow of water. As has been said, the flume, if an illegal obstruction at all, was an illegal obstruction from the day it was built, whatever may have been the quantity of water which the ditch was then carrying. By neglecting to take the necessary steps, plaintiff appears to have allowed this use to ripen into a prescriptive right, and the use being and remaining the same, the right to it cannot be affected by a subsequent change in the condition of the ditch.

It follows herefrom that the finding of the court against the plea of the statute of limitations is unsupported, and the judgment and order appealed from are therefore reversed.

McFarland, J., and Lorigan, J., concurred.